# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THADDEUS BROWN, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | NO. 20-cv-05391-RAL |
| Commissioner of Social Security,[1] | : | |

**RICHARD A. LLORET**                                                                                    November 17, 2021
**U.S. Magistrate Judge**

## MEMORANDUM OPINION

Thaddeus Brown seeks review of the denial of his claim for Social Security Disability Insurance ("SSDI") benefits. The ALJ found that Mr. Brown suffers from four severe impairments; Mr. Brown only appeals the finding that his migraine/tension headache condition does not render him disabled. Because I find that the ALJ did not address evidence contradicting her conclusions, reached conclusions not supported by substantial evidence, and did not engage in a complete residual functional capacity analysis, I will reverse the Commissioner's denial of benefits and remand this matter for further proceedings consistent with this opinion.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## PROCEDURAL HISTORY

On March 5, 2018, Mr. Brown filed a claim for SSDI, alleging a disability beginning on November 29, 2016. Administrative Record ("R.") 140. His claim was initially denied on May 4, 2018. R. 77.

On May 22, 2019, Mr. Brown requested an administrative hearing before an ALJ. R. 83. The ALJ held the hearing on September 30, 2019, and issued a decision denying Mr. Brown's claim on December 24, 2019. R. 12, 24. On January 6, 2020, Mr. Brown appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 137-38. The Appeals Council denied Mr. Brown's request for review on August 31, 2020. R. 1. On October 28, 2020, Mr. Brown filed this appeal in federal court. Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 7) and have briefed the appeal. Doc. No. 17 ("Pl. Br."), 20 ("Comm'r Br."), and 21 ("Pl. Reply").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Mr. Brown was forty years old on his disability onset date, making him a "younger person" under the regulations at all times relevant to his application. R. 23; 20 C.F.R. §§ 404.1563(c), 416.963(c). He has the equivalent of a high school education. R. 23. He worked as a landscape designer, which the ALJ categorized as a computer design technician position. R. 22, 35.  Mr. Brown was laid off from his job on November 29, 2016, because his supervisor said he could no longer keep up with the pace of work and he could not produce the same quality work he once could. R. 35-37, 179. On March 1, 2018, Mr. Brown applied for SSDI, alleging disability based on migraine headaches, anxiety, depression, bi-polar disorder, and ADHD. R. 140, 179.

**B. The ALJ's Decision**

On December 24, 2019, the ALJ issued her decision finding that Mr. Brown was not eligible for SSDI because he has not been under a disability, as defined by the Social Security Act. R. 9, 24. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[2]

At step one, the ALJ concluded that Mr. Brown had not engaged in substantial gainful activity ("SGA") since November 29, 2016, which is the date of alleged disability onset. R. 15. At step two, the ALJ determined that Mr. Brown had four severe impairments: Migraine/Tension Headaches, Major Depressive Disorder, Generalized Anxiety Disorder, and Attention Deficit Hyperactivity Disorder. *Id.* The ALJ also found that the record does not support Mr. Brown's diagnosis of Post-Traumatic Stress Disorder, thus she found this to be a non-medically determinable impairment. *Id.*

At step three, the ALJ compared Mr. Brown's impediments to those contained in the Social Security Listing of Impairments ("listing").[3] The ALJ found that the evidence was insufficient for a finding that Mr. Brown's migraines would be medically equal to

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id.*

listing 11.02 (epilepsy). *Id.* Furthermore, the ALJ found that none of Mr. Brown's mental health impairments met any listing criteria. R. 15-16.

Prior to undertaking her step four analysis, the ALJ assessed Mr. Brown's residual functional capacity ("RFC"), or "the most [Mr. Brown] can still do despite [his] limitations." 20 C.F.R. § 404.1545. The ALJ found that Mr. Brown could undertake light work as defined in 20 C.F.R. § 404.1567(b), subject to certain limitations.[4] R. 16. Thus, at step four, the ALJ found that he is unable to perform his past relevant work as a computer design technician. R. 22-23. At step five, the ALJ identified three jobs that Mr. Brown could perform considering his age, education, work experience, and RFC: routing clerk, marker, and garment sorter. R. 23-24. Because the ALJ identified jobs that Mr. Brown could perform, she found that Mr. Brown was "not disabled." R. 24.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing

---

[4] Specifically, the ALJ found that Mr. Brown "must avoid exposure to outside work and temperature extremes. He can endure only moderate exposure to pulmonary irritants such as dust, odors, gas, fumes, and poorly ventilated areas. He can tolerate only a moderate noise level. The claimant is further limited [to] unskilled work with simple, routine tasks, simple decision, and only occasional changes in workplace. Finally, he is limited to only occasional interaction with coworkers [and] supervisors, but no direct public interaction." R. 16.

4

court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir.

2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

While it is error for an ALJ to fail "to consider and explain [her] reasons for discounting all of the pertinent evidence before [her] in making [her] residual functional capacity determination," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (unpublished) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett,*" and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119-20; *Caruso*, 99 F. App'x at 379.

## DISCUSSION

Mr. Brown argues that substantial evidence did not support the ALJ's finding that his migraine/tension headache condition was not severe enough to equal listing § 11.02 (epilepsy), the listing used to capture headache disorders. Doc. No. 17, at 6-8. Mr. Brown also alleges that the ALJ erred by failing to consider all the evidence presented in his record and to give a rationale for discounting rejected evidence. *Id.* at 8-12. Mr.

6

Brown adds that evidence on the record contradicts the ALJ's finding that he was "do[ing] well" in terms of his headache condition. *Id*. at 8-9.

The Commissioner responds that substantial evidence supports the ALJ's final decision that the plaintiff is not disabled. Doc. No. 20, at 5-13. The Commissioner argues that the ALJ fully explained her rationale for not finding Mr. Brown disabled at step three and for finding that he had a sufficient RFC to engage in a range of light work. *Id*. at 6-8. The Commissioner also asserts that the ALJ did not ignore Mr. Brown's claims as to the frequency of his headaches, and that she even gave Mr. Brown the benefit of the doubt when weighing his opinion evidence. *Id*. at 11.

In reply, Mr. Brown asserts that the ALJ failed to address the medical evidence showing that his impairment was sufficiently severe to equal listing § 11.02. Doc. No. 21, at 1-4. Mr. Brown also alleges that the ALJ acted erroneously in insufficiently considering parts of his medical record in making her RFC assessment. *Id*. at 4-6. Furthermore, Mr. Brown objects to the ALJ's finding that his engagement with his wife's business suggests that he is able to "engage in substantial gainful activity on a consistent and sustained basis." *Id*. at 6-8.

I find that the ALJ (1) insufficiently explained her resolution of conflicting medical evidence in finding Mr. Brown not disabled under steps three and four, (2) reached conclusions which are not backed by substantial evidence, and (3) did not determine whether Mr. Brown could work on a regular and continuing basis when evaluating his RFC, contrary to Social Security regulations.

**A. The ALJ erred by insufficiently explaining her resolution of conflicting medical evidence in her step three and step four analysis.**

According to a 2019 Social Security Ruling (SSR), ALJs must analyze migraine/tension headache conditions in a manner akin to epilepsy in their step three analysis. SSR 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders, 84 Fed. Reg. 44667-01, 44671 (Aug. 26, 2019). In deciding whether a claimant's migraine/tension headache condition meets the threshold established under listing § 11.02, the ALJ must evaluate several factors, including frequency, intensity, duration, and accompanying symptoms, as well as the limitations in functioning caused by treatment, its side effects, and the condition itself. *Id.*[5] The ALJ does not need to explicitly enumerate her findings as to every factor listed in the SSR. *See Jones*, 364 F.3d at 505. But the ALJ must explain how she reaches her conclusion with reference to both affirmative and contradictory evidence. *See Burnett*, 220 F.3d at 119-20; *Caruso*, 99 F. App'x at 379.

The ALJ found that Mr. Brown's migraine/tension headache condition does not medically equal listing § 11.02. She writes, "[T]here is no documentation to indicate that the claimant is unable to function or has significantly reduced functioning during a headache or that they occur with such frequency as to possibly equal listing 11.02." R. 15.

---

[5] The relevant portion of the SSR states: "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." 84 Fed. Reg. at 44671.

I find that evidence in the record undercuts these conclusions, and the ALJ erred by not addressing this conflicting evidence.

Evidence in Mr. Brown's medical record undermines the ALJ's assertion that he does not experience significantly reduced functioning during a headache. For instance, in February 2019, Mr. Brown told his doctor that "[h]e has a severe headache about 10 [times] per month" with a pain rating of nine out of ten. R. 587. Furthermore, Mr. Brown told his doctor that when he has a severe headache, "[h]e has to lay down[;] if he is able to fall asleep it seems to help." *Id.* Additionally, in July 2018, Mr. Brown told his doctor that "when he is having migraines he is sensitive to light and sound." R. 589. While this evidence on its own may not be sufficient for a finding of significantly reduced functioning, the ALJ must explain why this evidence does not undermine her finding.[6] After all, the description of Mr. Brown's headache symptoms, apparently accepted as accurate by the doctors who treated and examined Mr. Brown, matches the symptoms described in SSR 19-4p. 84 Fed. Reg. at 44671.

As to the frequency of Mr. Brown's headaches, not only does Mr. Brown testify that they occur two-to-three days per week, *see* R. 17, but Mr. Brown's medical evidence also indicates they occur rather frequently during the month. *See, e.g.*, R. 587 (Mr. Brown suffered severe headaches ten times per month as of February 2019); R. 567 (Mr. Brown suffered migraines thirteen-to-fifteen days per month as of June 2017). SSR 19-4p(8) seems to contemplate a headache frequency of once a week for at least three

---

[6] Relatedly, in analyzing Mr. Brown's RFC, the ALJ writes, "As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the record simply does not support them." R. 20. Once again, the ALJ does not explain why Mr. Brown's statements to his doctor in July 2018 and February 2019 about his frequent, debilitating migraines do not undercut this finding. *See* R. 587, 589. On remand, the ALJ must explain her rationale for crediting or discounting all material medical evidence.

9

consecutive months despite adherence to treatment. 84 Fed. Reg. at 44671. The headache frequencies described in the record in this case far exceed the frequencies contemplated in SSR 19-4p. Yet, the ALJ never discusses why this evidence does not undermine her finding that Mr. Brown is not disabled. The ALJ's reasoning for her step three conclusions does not have to be explained in the immediate context of her step three analysis, but it must be spelled out somewhere in the decision. Her reasoning is unclear in this decision. On remand, the ALJ must give full support for her conclusions and address contradictory evidence in the record.

Similarly, at step four, the ALJ states that Mr. Brown's headache condition has improved, and she asserts that she explained her rationale for making this finding elsewhere in her decision. R. 20. I am unable to find a substantial analysis of evidence that contradicts the conclusion that Mr. Brown's condition is improving. Substantial evidence is not equivalent to a preponderance of the evidence; the evidence must merely be more than a scintilla. *Brown*, 845 F.2d at 1213. But where there is conflicting evidence, the ALJ must explain her resolution of the conflict so that a judge on appeal can meaningfully review the resolution. *See Plummer*, 186 F.3d at 429.

Mr. Brown's most recent migraine-related medical record undercuts the ALJ's conclusion that his condition is improving. Mr. Brown's most recent visit with his neurologist appears to reveal that his headache condition had worsened in the preceding months. *See* R. 585-87 (as of February 2019, Mr. Brown reported suffering from severe migraine pain approximately half the month). Yet, the ALJ does not appear to engage with this medical record in any meaningful manner.

The ALJ's passing citations to improvement in Mr. Brown's condition do not cure the problem. A meaningful explanation of how an ALJ resolves contradictory evidence

10

requires that the ALJ engage and discuss the contradictory evidence and explain why it is overcome by evidence that supports the ALJ's conclusion. That did not happen here. In summarizing Mr. Brown's headache treatment to date, while noting that his treatment has provided "some relief," the ALJ cites two statements from Mr. Brown's neurologist claiming that Mr. Brown "states he is doing well." R. 17 (quoting R. 440, 558). The context of these statements suggests they do not indicate consistent improvement in his condition, though. Those statements were taken respectively on July 17, 2017, R. 440, and January 8, 2018, R. 558. Yet, on October 4, 2017, Mr. Brown said that the medication Depakote, which he said in July 2017 improved his condition (R. 440), was only helping a little bit, and that he suffered thirteen headaches that prior September. R. 437-39. Furthermore, during a July 18, 2018 visit to his neurologist, Mr. Brown said, "his migraines are not getting better," his most recent migraine lasted twelve hours, and he suffered light and sound sensitivity. R. 589. This evidence undercuts the ALJ's finding that Mr. Brown's condition has improved. Thus, the ALJ must explain how she weighs this evidence in determining whether Mr. Brown's condition has indeed improved.

      I do not weigh the evidence or make a judgment that the ALJ's conclusions could not be supported by the record here. However, without any meaningful discussion of the evidence that contradicts the ALJ's conclusions, I cannot perform the review function the statute and case law require. This is error, and a remand is necessary.

## B. The ALJ's finding that Mr. Brown's treatment has been routine and conservative is not supported by substantial evidence.

The ALJ erred by reaching a conclusion about Mr. Brown's migraine/tension headache condition which is not supported by substantial evidence. This warrants a remand.

At step four, the ALJ calls Mr. Brown's headache treatment "routine and conservative." R. 20. This conclusion is not supported by substantial evidence. It may be appropriate for a doctor to form an opinion that one would expect to see a more aggressive treatment history for a medical issue. Such an opinion would be based upon the doctor's years of medical training and clinical experience, and it would enable her to come to some general rule-of-thumb about the relationship between aggressive treatment history and the severity of the disorder. Such an opinion is often offered by an examining or consulting physician[7] and can form the basis of an ALJ's determination that the level of treatment is not commensurate with the limitations identified by the treating physician. But the ALJ is not free to "go it alone." It is not permissible for an ALJ to arrive at such a conclusion, absent substantial support in the medical evidence in the record before her. Conservative treatment for a particular condition may mean that aggressive treatment does not offer much hope of success, rather than indicate that the condition is mild. Without the benefit of years of training and clinical experience that a physician brings to bear in evaluating whether a course of treatment is "conservative," and the significance of conservative versus aggressive treatment, the conclusion is not supported by substantial evidence. I find no support for this conclusion in the medical

---

[7] I have reviewed the treatment notes and evaluations by Dr. Catherine Smith (R. 67-70, 71-73), Dr. Marta Jimenez (R. 433-52), Dr. Kenneth Morris (R. 527-46), Dr. Tara Pascal (R. 585-616), and Dr. Ziba Monfared (R. 755-75), and there is no opinion expressed that Mr. Brown's treatment has been routine and conservative, or what more aggressive treatment might be expected in light of his significant complaints.

12

record, as the record merely describes Mr. Brown's treatment without weighing whether the treatments are aggressive or conservative by nature.

### C. The ALJ erred by not analyzing whether Mr. Brown could work on a regular and continuing basis.

In determining whether a claimant has residual functional capacity, the ALJ must weigh whether the claimant can engage in "sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8p, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). The Social Security Administration has defined a "regular and continuing basis" as comprising of work lasting "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* I find that the ALJ erred by not conducting this analysis in issuing her decision.

Mr. Brown testified that he suffers migraine symptoms approximately fifteen days per month, *see* R. 47, 49, and several of his medical records support this assertion. The ALJ indeed cites this evidence in her decision. R. 17 ("He has migraine headaches 2-3 days per week, with each lasting approximately 6 hours.... During the day, the claimant lays down and waits for his medications to work.").[8] The ALJ also acknowledges the array of symptoms which accompany his headaches, while noting Mr. Brown's testimony that the symptoms sometimes persist for days. R. 17.[9] Yet, the ALJ

---

[8] The ALJ writes in full: "He has migraine headaches 2-3 days per week, with each lasting approximately 6 hours. Prior to having a migraine, he has an aura consisting of a metallic taste, upset stomach, and an aura of light. During the day, the claimant lays down and waits for his medications to work. His wife and children perform the household chores. When not suffering from a migraine, the claimant is able to take short shopping trip[s]. He is able to drive locally unless suffering from a migraine. His migraine medications cause dizziness." R. 17.

[9] "The claimant presented with a combination of tension and migraine headaches with complaints of vertigo, dizziness, gastrointestinal upset, photosensitivity, phonosensitivity, and neck pain, sometimes lasting for days." R. 17.

13

never discusses whether these symptoms may impact Mr. Brown's ability to work on a regular and continuing basis.

During the hearing, the vocational expert ("VE") testified that regularly missing one or more days of work per week or two-to-three consecutive days of work twice per month would render a claimant ineligible to maintain work. R. 58. Yet, the ALJ does not engage with this testimony in her analysis. Furthermore, Mr. Brown testified that when he suffers migraine symptoms, he must lay down in a space with minimal noise and light. *See* R. 42-43 (testimony that when he has a migraine, Mr. Brown lays down in his living room or, if there is activity in the home, in his bedroom with the shades drawn). Presumably, being forced to lay in a quiet, dark room several days per month would impact one's ability to work a forty-hour work week. The ALJ nevertheless fails to engage with this testimony.

The ALJ also finds that Mr. Brown's current activities support the notion that he has RFC sufficient to engage in light work. The ALJ writes that "the claimant's professed activities of daily living support a greater degree of functioning than alleged in the oral and written presentations." R.20. The ALJ then explains that Mr. Brown's ability to help his wife fill and ship orders for her business supports her finding that Mr. Brown has the RFC to engage in light work. *Id*. However, as this type of work does not require full-time hours or regular scheduling, it does not address the effect of the frequent and debilitating nature of Mr. Brown's headaches on his ability to work a regularly scheduled forty-hour work week.

I find that the ALJ erred in failing to analyze whether Mr. Brown could work a full-time job on a regular and continuing basis, in light of evidence of frequent and debilitating headaches. She must address this prong of the RFC analysis on remand.

## CONCLUSION

For the reasons explained, Mr. Brown's request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings.

**BY THE COURT:**

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**